IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALLEN FOREST PORTER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:07-cv-01811-JEO |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the court on the motion of the defendant, United States of America ("United States" or "the defendant"), for summary judgment. (Doc. 26).[1] The issues have been fully briefed (doc. 27, 30 & 32), and oral argument was conducted on June 25, 2009. For the reasons set out herein, the defendant's motion is due to be granted.

## PROCEDURAL HISTORY

The plaintiff, Allen Forest Porter, Jr. ("Porter" or "the plaintiff"), filed a complaint and amendment thereto, alleging a negligence claim against Goodwill Industries and the United States of America under the Federal Tort Claims Act ("FTCA") (28 U.S.C. §§ 1346(b) and 2671) for injuries sustained when he fell in a restroom at the Robert S. Vance Federal Building in Birmingham, Alabama. (Doc. 1 & 4). Goodwill has previously been dismissed by the court.[2] *See* Doc. 15, 18 & 19.

---

[1] References to "Doc. ___" are to the documents as numbered by the clerk of court in the court's record of the case.

[2] Goodwill filed an unopposed motion to dismiss (doc. 10), which the court granted premised on the fact that the plaintiff did not have an FTCA claim against Goodwill. (See Doc. 15).

FACTS[3]

On April 8, 2002, the plaintiff entered one of the third floor restrooms in the Robert S. Vance Federal Building. (Doc. 30-2). After taking a couple of steps, he fell "on a slick wet floor." *Id*. In his "Claim" form, the plaintiff states:

> The bathroom had been mopped without the janitor setting out any wet floor signs, causing me to be unaware that the floor was wet until I had slipped and injured by back. . . . The Security Officer Kenneth Green visited the site right after Mr. Porter fell and confirmed that the floor was damp and there was (sic) indeed no signs present. Mr. Ernest Kirby (sic), the probation officer, confirmed that there was a skid mark on the floor where Mr. Porter fell.

(Doc. 30-4). According to a separate incident report, a Goodwill employee was notified of the plaintiff's fall and went to the bathroom and re-mopped the floor, but did not put out a "Caution: Wet Floor" sign in the area. (Doc. 30-6 to 30-8). In a signed "statement" dated April 30, 2009, the plaintiff states:

> Upon returning to my Probation Officer's office after the fall in the restroom, I had a discussion with another gentleman that was called in about the incident. He said, "My bad. I forgot to put the sign out." or words to that effect. My recollections is that this was the person who came to re-mop the floor who had previously mopped it.

(Doc. 30-3). The fire department was summoned. After being examined by paramedics, the plaintiff was placed in a neck and back brace and taken to St. Vincent's Hospital. (Doc. 30-7).

The plaintiff acknowledges that the Federal Government contracted with Goodwill for cleaning services in the Vance Building. (Doc. 27 at 19[4]). There is no indication, much less

---

[3] The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[4] The page numbers are the electronic numbers assigned by the Clerk of the Court as indicated in the document.

evidence, that any federal employee cleaned or maintained the bathroom. *Id*.

The plaintiff filed a voluntary petition under Chapter 7 of the Bankruptcy laws on October 11, 2002.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings.  (*Id.*).

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### The Defendant's Arguments

The United States argues that the motion for summary judgment is due to be granted because no federal employee breached any duty owed to the plaintiff.  (Doc. 27 at 3).  It further argues that the plaintiff is judicially estopped from bringing his claim for damages because he failed to disclose his claim in the bankruptcy proceeding.[5]  *Id*. at 6.  As to the second matter, the parties have discovered from a recent review of the plaintiff's bankruptcy file that he did in fact list the potential "'slip and fall' personal injury action" as an asset in the bankruptcy proceeding. *See In re Debtor Allen F. Porter, Jr.*, Case No 02–8136-TOM-7 (Doc. 3 (Schedules and Statement of Affairs).  Accordingly, this argument is moot premised under the circumstances

---

[5] "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).  It is "intended to prevent the perversion of the judicial process" and applies to the "calculated assertion of divergent sworn positions." *Id.* (citations omitted).  "[T]he doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." *Id.* at 1286.

*Melton v. National Dairy Holdings, L.P.*, 2009 WL 653024 (M.D. Ala. 2009).

now before the court.

### "Slip and Fall" Law

In the typical "slip and fall" case like this – involving an invitee such as the plaintiff – the law is clear:

> "It is a well-established rule of law in this state that in order to prove a claim of negligence a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff." *Lowe's Home Centers, Inc. v. Laxson*, 655 So. 2d 943, 945-46 (Ala. 1994). The duty owed by a premises owner to an invitee is also well established:
>
>> "The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided."
>
> *Armstrong v. Georgia Marble Co.*, 575 So. 2d 1051, 1053 (Ala. 1991). This duty does not, however, convert a premises owner into an insurer of its invitees' safety. *See Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403, 404 (Ala. 1995). Moreover, the mere fact that a business invitee is injured does not create a presumption of negligence on the part of the premises owner. *See id*. Rather, a premises owner is liable in negligence only if it "fail[s] to use reasonable care in maintaining its premises in a reasonably safe manner." *Id*.

*Kmart Crop. v. Bassett*, 769 So. 2d 282, 284-85 (Ala. 2000). *Accord Neeley v. Gateway, Inc.*, 977 So. 2d 511, 513 (Ala. Civ. App. 2007).

The United States initially argues that "[t]here is no evidence that there was any hazardous condition on the floor prior to the plaintiff's entry into the washroom. Neither is there evidence that anyone knew about such a condition, if any existed." (Doc. 27 at 6). Accordingly, counsel for the United States concludes that the plaintiff "cannot show that a federal employee breached any duty to him" as is required. *Id*. The plaintiff counters that (1) "common sense

5

provides a presumption that someone is not going to injure themselves," and (2) "the totality of the circumstances . . . indicate[s] strongly that the floor was wet when Mr. Porter entered the restroom." (Doc. 30 at 2). He then argues that although he cannot state with certainty that any person, except the person that mopped the floor, can be considered a federal employee, "the United States should have inspected the floors after they were mopped in order to insure that they were dry or that 'wet floor' signs were out." *Id*. at 3.

As to the first contention, that there is no evidence of a hazardous condition, the court disagrees. The evidence in the form of affidavits and statements of witnesses demonstrates that there was water on the floor of the restroom and there were no warning signs in the area. This evidence consists of the plaintiff's affidavit, the claim form statement, the incident report, and the statement of United States Probation Officer Ernest Kenty. The motion is due to be denied on this ground.

As to the second contention, that there is no evidence that a responsible federal party knew of the situation before the incident, the court finds the same to have merit. In *Bruno's Inc. v. Schad*, 628 So. 2d 934 (Ala. Civ. App. 1993), the court quoted *Cash v. Winn-Dixie Montgomery, Inc*., 418 So. 2d 874, 876 (Ala. 1982),[6] concerning the duty owed by a premise owner:

> "[T]here is a duty upon all storekeepers to exercise reasonable care in providing and maintaining a reasonably safe premises for the use of their

---

[6] In *Cash*, the plaintiff stepped on a can and fell down. *Cash*, 418 So. 2d at 875. While the store manager testified that although he saw a can in the vicinity where the plaintiff fell, he did not see any evidence that the can had been stepped on or that the can had slid across the floor. *Id*. at 876. The manager also testified that he had been in the same area some two and a half hours before the plaintiff's fall and he did not see a can in the floor at that time. *Id*. Further, the evidence showed that the floor had been swept twice the day of the plaintiff's fall, the last time being four hours prior to the accident. *Id*. The court, affirming summary judgment for the defendant, found that no evidence existed that the can had been on the floor long enough to be "bent, mashed or mutilated." *Id*. Accordingly, the court concluded that the can could have been dropped onto the floor by another customer just minutes before the plaintiff's fall. *Id*.

> customers. The storekeeper is not an insurer of the customers' safety but is *liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition*. No presumption of negligence arises from the mere fact of injury to the customer. The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of its servants or employees."

*Cash*, at 936 (italics in text). The plaintiff is required to demonstrate by substantial evidence that the owner or an agent or servant of the owner created the condition or "had notice of the condition" and "had long enough before the fall to have an opportunity, in the exercise of due care, to clean the spill." *McCombs v. Bruno's Inc*, 667 So.2d 710, 712 (Ala. 1995). There must be evidence in the record "that the defendant knew the [substance] was on the floor or that [it] had been on the floor for such an inordinate length of time as to impute constructive notice." *Id*. at 713 (citing *Cash*, 418 So. 2d at 876).

Reviewing the record before this court, it is evident that the plaintiff has not presented any evidencing regarding the defendant's knowledge of the liquid or how long the liquid was on the floor to "impute constructive notice" to the defendant. *Mccombs*, 667 So. 2d at 713 (citing *Cash*, 418 So. 2d at 876). As noted by the court in *Cash*, "For aught that appears, the [liquid] may have been [left] on the floor by another [person] only minutes before the plaintiff fell." *Id*. at 876. The plaintiff has offered no testimony concerning how long the item was on the floor and, as correctly noted by the United States, "there was [not] anything about the substance from which to infer the length of time the substance had been on the floor." (Doc. 32 at 4).

To the extent that the plaintiff argues that the defendant was negligent in failing to discover the substance on the floor, the court is not impressed. Absent any evidence of how long the substance was on the floor, the plaintiff's argument is premised on pure conjecture and

7

speculation. As just noted, the plaintiff must present "substantial evidence" that the defendant had either actual or constructive notice of the condition. *McCombs*, 667 So. 2d at 712.

### Other Liability Under The FTCA

The plaintiff also argues that there is a relevant exception to the requirement that he demonstrate knowledge on the part of a defendant when "the premises (sic) owner has failed to perform reasonable inspection or maintenance to discovery and remedy the dangerous condition." (Doc. 30 at 4 (citing *Kmart Corp. v Peak*, 757 So. 2d 1138 (Ala. 1999)). In support of this contention, the plaintiff argues (1) the United States had a contract with Goodwill for the cleaning and maintenance of the restroom, which were (sic) to be performed between 6:00 a.m. and 6:00 p.m., (2) the United States never exercised its option in the contract to direct that the cleaning be done at night, (3) the United States reserved a right to direct or supervise the contract employees, directly or indirectly, (4) the contract included a provision for a government representative to perform "day to day inspect and monitoring of the [c]ontractor's work" and monthly inspections, and (5) the contract included performance requirements. (Doc. 30 at 4-6 (citing Appendix C 1-5)[7]. He concludes:

> Thus, there is a very real dispute as to whether Goodwill Industries and its employees who physically cleaned the restrooms were in fact contractors such that the United States is shielded from liability for their negligence, or whether there was an agency relationship between the United States as a principal and Goodwill Industries and its staff as agents. Assuming for the sake of argument that there was no such agency relationship, there is a genuine dispute as to whether or not the United States failed in its duty to inspect the restroom. Mr. Porter contends that, especially if the cleaning and maintenance of the restrooms was to be done during the day, the [contracting officer's representative] or his subordinate had a duty to inspect the restrooms contemporaneously with the mopping thereof in that it was within reasonable expectations that people could enter the restrooms shortly

---

[7]These items are found at document 30-9 to 30-12 in the court's record.

> after they had been mopped and before they had had a chance to dry. Those nearly contemporaneous inspections could have alerted the United States to the fact that no adequate signage was put in place in this instance. Moreover, having the floors routinely mopped during the day increases the likelihood that an accident such as this will happen.

(Doc. 30 at 5-6). The United States counters that these contentions concerning the contract have no bearing on the present issue. (Doc. 32 at ¶ 4).

The plaintiff's contentions in this section appear to be two-fold. First, the defendant fail to adequately inspect the area. Second, that the unnamed Goodwill employee is an employee of the United States. For the reasons stated previously, the court rejects the plaintiff's initial assertion. The second will be addressed below.

"The FTCA imposes civil liability on the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' 28 U.S.C. § 1346(b)." *Duque v. United States*, 216 Fed. App. 830, 831 (11th Cir. 2007) (unpublished). For liability to be imposed upon the United States, "the alleged tortfeasor must be an employee of the government." *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1273-74 (11th Cir. 2000).

The pertinent question under the plaintiff's second theory of liability is whether this unnamed Goodwill employee is also an employee of the United States for purposes of the FTCA.[8] In *Bravo v. United States*, 532 F.3d 1154 (11th Cir. 2008), the Eleventh Circuit Court of Appeals stated:

---

[8] The court's framing of this issue is consistent with the representations of the parties at oral argument.

> We have established the "control test" for determining whether an individual is a government employee or an independent contractor: "[A] person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time." *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000). Contrary to the government's argument, and what might be deduced from the language we have just quoted, the test does not require that the government exercise actual control over an individual. It is enough that the government has reserved the power or authority to control him. In *Patterson*, we put it this way: "[I]t is not necessary that the Government continually control all aspects of the individual's activities, so long as it has the authority to do so given the nature of the task." *Id.*; *see also Logue v. United States*, 412 U.S. 521, 527-28, 93 S. Ct. 2215, 2219, 37 L. Ed. 2d 121 (1973) ("[T]he critical factor in [determining if an individual is a government employee or an independent contractor] is the authority of the principal to control the detailed physical performance of the contractor." (emphasis added)).

*Bravo*, at 1159-60. In *Bravo*, the evidence demonstrated that the doctor in a negligence action was a "Government employee" because the contract between the United States and Humana provided that the doctor was subject to "day to day direction" from Navy personnel "in a manner comparable to the direction over Navy uniformed and civil service personnel engaged in comparable work." *Id.*, 532 F.3d at 1160. Additionally, the court stated

> Even though Humana, as the government contractor, retained the authority to enforce the terms of the agreement, the contractual language makes clear that the Naval Hospital reserved the right to direct Dr. Kushner "in the course of patient care activities." That TRICARE contract provision and the "Statement of Work" contained in the other contracts show that the government retained sufficient control over the day-to-day activities of Dr. Kushner to satisfy the *Patterson* control test.

*Id*. In *Patterson*, the evidence established that

> the Government did not simply hire two contractors to accomplish a broadly-defined task while leaving to their discretion how the task was accomplished. Instead, the Government established how this entire operation would go down, and directed the pilots not only to achieve a particular result (purchasing narcotics from a Colombian drug dealer as part of a sting operation), but also to achieve that result in a particular way at a particular location at a

>particular time from a particular dealer.  In other words, the Government treated
>the pilots as employees, not independent contractors.

*Patterson*, 226 F.3d at 1274.

The court has considered the plaintiff's contentions and does not find them sufficient to overcome the defendant's summary judgment motion.  The contract provisions, while arguably relevant, do not change the legal matrix the plaintiff has failed to satisfy.  Although the contract between Government Services Administration and Goodwill specifies the services to be provided; the supervision of the activities of Goodwill, including inspections; and performance standards, these provisions do not alter the fact that the plaintiff has not demonstrated the "control" necessary to transform the unnamed Goodwill employee to an employee of the United States for liability purposes.  There simply is not the kind of contractual or factual foundation for detailed control found in *Patterson* or *Bravo* in this case.

>The plaintiff argues that the controlling contract
>
>designated a GSA contracting officer and contracting officers' representative
>(COR), the duties of whom included "acting as the Governments's representative
>in charge of work at the site."  The COR's duties were to [be] augmented by an
>on-site government Quality Control Specialist, subject to availability, the duties of
>whom where the "day to day inspection and monitoring of the Contractor's work."
>...  The representative of the United States even had to be consulted as to when
>any work under the contract would begin. ...  Joint monthly inspections were
>called for. ...  The cleaning of the restrooms was to be performed between 6:00
>a.m. and 6:00 p.m, and the contract had very specific requirements which went to
>the particulars of performance.  ...  Thus there is a very real dispute as to whether
>Goodwill Industries and its employees who physically cleaned the restrooms were
>in fact contractors such that the United States is shielded from liability for their
>negligence, or whether there was an agency relationship between the United States
>as principal and Goodwill Industries and its staff as agents.

(Doc. 30 at 5).  These general oversight and control provisions are not the kind of items that demonstrate the "control of the detailed physical performance of the contractor" that leads to the

11

imposition of governmental liability under the FTC.  *Logue*, 412 U.S. at 527-28.  To the contrary, it is the oversight authority one entity would understandably afford a general, independent contractor.[9]

Accordingly, the motion is due to be granted.

## CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion for summary judgment (doc. 26) is due to be granted.  An appropriate order will be entered.

**DONE**, this 29th day of June, 2009.

*/s/ John E. Ott*
_____
**JOHN E. OTT**
United States Magistrate Judge

---

[9] The court notes that one provision in the contract does state that "[i]t is the policy of GSA that Government direction or supervision of contract employees, directly or indirectly, shall not be waived." (Doc. 30-9).  Although this provision might suggest a greater right of control, without more, the court finds that it is insufficient.  Had the evidence demonstrated an active, daily control of the Goodwill employees, the issue would be closer.  However, there is no evidence in the record to support such a conclusion.